Joel A. Kauth, CA Bar No. 186544
E-mail: joel.kauth@kppb.com
Mark Yeh, CA Bar No. 307181
E-mail: mark.yeh@kppb.com
KPPB LLP
2190 S. Towne Centre Place, Suite 300
Anaheim, CA 92806
PH:  (949) 852-0000
Fax: (949) 852-0004

Attorneys for Plaintiff Gemsa Enterprises, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| GEMSA ENTERPRISES, LLC, | Case No. 8:21-CV-844 |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT FOR BREACH OF CONTRACT, PROMISSORY ESTOPPEL, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, TORTIOUS INTERFERENCE, FRAUDULENT INDUCEMENT, FRAUD IN THE PERFORMANCE, AND UNFAIR COMPETITION** |
| PRETIUM PACKAGING, L.L.C., | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff GEMSA ENTERPRISES, LLC ("Gemsa" or "Plaintiff") brings this action against PRETIUM PACKAGING, L.L.C. ("Pretium" or "Defendant"), and for its causes of action alleges:

## JURISDICTION AND VENUE

1.  This is an action arising out of breach of contract, tort, and unfair competition claims in violation of the California Commercial Code, Article 2 of the Uniform Commercial Code, the California Business and Professions Code §§

17200 et seq., and common law.

2. This Court has jurisdiction over this action due to diversity of citizenship pursuant to 28 U.S.C. § 1332.

3. Plaintiff is a corporate entity organized and existing under the laws of the State of California, with its principal place of business located in La Mirada, California.

4. Defendant is a corporate entity organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of Missouri.

5. Plaintiff seeks damages totaling at least approximately $975,000.

6. Defendant has a manufacturing and supply location in Anaheim, California. Defendant regularly operates and conducts business in this district, including the events that led to this action. Venue is proper under 28 U.S.C. § 1391(b).

7. Defendant has substantial, ongoing, and systematic contacts with this judicial district, and regularly conducts business within this judicial district. On information and belief, Defendant employs personnel at its Anaheim, California location. Defendant has therefore purposefully availed itself of the privilege of conducting business within this judicial district, and has purposefully directed activities at residents of this judicial district.

## **PARTIES**

8. Plaintiff Gemsa is a corporation organized and existing under the laws of California, and having a place of business at 14370 Gannet St., La Mirada, California 90638.

9. Defendant Pretium is a corporation organized and existing under the laws of Delaware, and having a regular and established place of business at 5235 East Hunter Ave., Anaheim, California 92807.

## FACTUAL BACKGROUND

10. Plaintiff Gemsa is a food product company supplying food oils, including olive and grapeseed oils, for industrial use and food manufacturers. Gemsa bottles its own oils, but purchases its bottles from outside vendors.

11. Plaintiff Gemsa began communicating with one such outside vendor, Defendant Pretium, on or around 2018. According to its website, Pretium is a manufacturer and supplier of packaging solutions with facilities and production lines throughout North America.

12. In 2018, Plaintiff Gemsa and Defendant Pretium entered into negotiations for Pretium to supply bottles to Gemsa.

13. On January 8, 2019, a Pretium Sales Manager sent Gemsa an email containing an attached document titled "Offer Letter" (the "Offer Letter," a copy of which is attached as Exhibit A).

14. In the body of Pretium's January 8, 2019 email, Pretium's Sales Manager stated: "Good to speak with you this am. Awesome to hear that the new 2 liter PET bottle has been approved. Please see updated price quote for your container. I have Anaheim standing by to run your first load upon receipt of a PO."

15. The Offer Letter provided a "Part description" term for "2 liter custom PET oil bottle" products.

16. The Offer Letter provided a "Plant of manufacture" term for Anaheim, California.

17. The Offer Letter provided "Pricing (USD$)" terms, including that the price per 1,000 clear bottles would be $325.00, the delivered pricing to also be $325.00, and a 2 cavity mold set price at $19,350.00.

18. The Offer Letter also provided a time period and quantity term: "3 year agreement – 3MM bottles / yr projection – no short fall penalty."

19. The Offer Letter also provided other terms, including "Min order is 100,000 bottles."

20. The Offer Letter also provided additional contract terms, including the following (reproduced here, and also in Exhibit A in its entirety):

- Pricing does include pallets
- Pricing does not include cap/closure
- Pricing offer is valid for 30 days from date of offer.
- Delivered pricing
- Payment terms NET 30 days from date of invoice.
- Pricing moves: 6 months CDI – current price to be held for 6 months after 1st shipment.
- Pretium specified resin applies.
- Tooling Payment Terms:
    - 50% with order, 50% upon approval of samples
- All prices will be subject to resin and other raw material escalation and reduction. Pricing is based on the offer date's previous months CDI resin costs.
- Pretium standard terms & conditions apply.
- Above was agreed to by Emilio on May30th, 2018.

21. The Offer Letter also provided specific parameters for the manufacture of the oil bottle product, including the following (reproduced here, and also in Exhibit A in its entirety):

| Material (resin type) | PET |
|---|---|
| Color | Clear only |
| # of Cavities | 2 |
| Gram weight | 85 |
| Neck finish | 42mm Rical Snap or Bericap |
| Decoration | none |
| Packaging | Bulk trays, no pallets |
| Treatment(s) | none |

22. The Offer Letter included the signature block of the Pretium Sales Manager at the bottom.

23. After receiving Pretium's Offer Letter, Gemsa sent a response email to Pretium on the same day containing purchase order No. 005330 as an attachment.

24. Gemsa's purchase order No. 005330 was an order for 26,000 bottles at $0.325 per bottle, for an extended price of $8,450.

25. Upon receipt of Gemsa's purchase order No. 005330, and on the same day, Pretium sent a reply email confirming that the purchase order had been received.

26. On January 15, 2019, Pretium sent a "Sales Order Acknowledgment"

confirming receipt of purchase order No. 005330.

27. Since purchase order No. 005330 was submitted in January 2019, Gemsa subsequently and consistently submitted multiple additional purchase orders each month to Pretium.

28. Each of these subsequent purchase orders followed the same process as before, which would comprise the following steps:

29. A) Gemsa would submit a purchase order to Pretium.

30. B) Pretium would responsively submit a Sales Order Acknowledgement of the corresponding purchase order.

31. Beginning in April 2020, Gemsa submitted its monthly purchase orders, but experienced delays in receiving Sales Order Acknowledgements of said purchase orders.

32. In reliance upon Pretium's commitment to supply the specific 2L bottle, Gemsa invested in retooling its production line in order to accommodate the specific bottles it received from Pretium.

33. In mid-2020, Gemsa began to experience delays in Pretium's fulfilling and delivery of its orders.

34. Gemsa inquired as to the reason for the delays, and received a variety of purported explanations including: the COVID-19 pandemic, machine breakdown, and exceedingly hot temperatures inside the manufacturing plant.

35. Pretium never communicated to Gemsa that it would stop fulfilling Gemsa's orders.

36. Gemsa continued to submit monthly purchase orders to Pretium, but continued to experience delays by Pretium in acknowledging and fulfilling these orders.

37. In addition to the delays, Pretium's fulfilment of Gemsa's purchase orders were deficient for at least its July 2020 purchase orders, as Pretium only delivered half of the requested number of bottles.

38. To continue supplying its products to its customers, and in view of acknowledgement delays and inability of Pretium to fulfill Gemsa's purchase orders, Gemsa sought an alternate manufacturer to supply bottles for one customer around late 2020.

39. Although Gemsa secured production of some bottles from an alternate manufacturer, the customer preferred the original bottles that Gemsa had acquired from Pretium, and did not want any future orders packaged in the bottles from the alternate supplier.

40. Beginning around August 2020, Pretium ceased to deliver any bottles to Gemsa despite Gemsa continuing to submit its monthly purchase orders through January 2021.

41. Also beginning around August 2020, Pretium ceased to acknowledge any submitted Gemsa purchase orders.

42. When Gemsa inquired about the failure of Pretium to acknowledge or fulfill any purchase orders, Pretium stated that "Pretium currently has no open purchase orders from Gemsa," despite numerous email communications from Gemsa to Pretium submitting such purchase orders.

43. Due to the failure of Pretium to supply the agreed-upon quantity of bottles, Gemsa was unable to deliver its product to certain customers.

44. In addition, Gemsa was unable to make additional sales, as it did not have the required bottles in which to deliver its oil.

## BACKGROUND OF CONTRACT

45. A valid, enforceable, and binding contract was formed between Gemsa and Pretium as evidenced by Pretium's written and signed "Offer Letter" in January 2019, and Gemsa's acceptance of that offer through its submission of its first purchase order in January 2019, as well as Gemsa's consistent submission of monthly purchase orders since the contract was formed.

46. The valid and enforceable contract between Gemsa and Pretium was

for a term of three years (i.e., the contract term ends in January 2022).

47. The valid and enforceable contract between Gemsa and Pretium was for a maximum quantity of three million bottles per year with no short fall penalty in the case Gemsa ordered an amount less than 3 million bottles per year.

48. Pretium's complete failure in fulfilling and delivering any bottle products to Gemsa at least as early as August 2020 constitutes a material breach of its contractual obligation to supply bottle products to Gemsa for the duration of the contract term.

49. Pretium's delivery delays over several months and subsequent complete failure to deliver any bottle products constitutes a pattern of conduct to breach its contract with Gemsa.

50. As a direct result of Pretium's failure to fulfill and deliver bottle products to Gemsa, Gemsa was unable to furnish certain bottled food oil products to its customers.

51. As a direct result of – and in reliance on – Pretium's promise to fulfill and deliver bottle products to Gemsa, Gemsa incurred additional costs for retooling its production line.

52. As a direct result of Pretium's delays in fulfilling and delivering bottle products to Gemsa, multiple customers were dissatisfied and reduced their purchases from Gemsa due to Gemsa's reduced ability to provide certain bottled food oil products.

53. As a direct result of Pretium's delays in fulfilling and delivering bottle products to Gemsa, Gemsa was unable to make additional sales to new customers.

54. The past damages from lost sales, reduced sales, and retooling costs directly attributable to Pretium's failure to provide bottles to Gemsa amounts to at least approximately $975,000.

55. Gemsa continues to incur damages in the amount of at least approximately $125,000 per month based on Pretium's failure to supply bottles.

## TORTIOUS ACTIVITIES OF DEFENDANT

56. Pretium made a false statement of fact that it would provide Gemsa bottle products for the contractual term of three years.

57. Pretium made a false statement of fact that it could provide Gemsa a quantity of bottles up to three million per year.

58. Gemsa relied upon Pretium's misrepresentation that it would provide bottle products for the contractual term of three years.

59. Gemsa relied upon Pretium's misrepresentation that it could provide up to three million bottles per year.

60. By providing purported explanations for delays, Pretium deceived Gemsa that it would continue to provide bottle products to Gemsa.

61. Gemsa relied upon Pretium's misrepresentation that Pretium's failure to provide bottle products were due to delays.

62. Pretium's "Offer Letter" was a clear and unambiguous promise that reasonably induced Gemsa to rely upon Pretium's ability to supply bottle products on a monthly basis so as to be able to supply Gemsa's own customers with bottled food oils.

63. Gemsa's reliance upon Pretium's "Offer Letter" was reasonable and foreseeable due to the nature of the promise and the inherent nature of the industry.

64. As a direct result of Pretium's failure to fulfill and deliver bottle products to Gemsa, Gemsa was unable to furnish certain bottled food oil products to its customers.

65. As a direct result of Pretium's delays in fulfilling and delivering bottle products to Gemsa, Gemsa was unable to make additional sales to new customers.

66. As a direct result of – and in reliance on – Pretium's promise to fulfill and deliver bottle products to Gemsa, Gemsa incurred additional costs for retooling its production line.

67. As a direct result of Pretium's delays in fulfilling and delivering bottle

products to Gemsa, multiple customers were dissatisfied and reduced their purchases from Gemsa due to Gemsa's reduced ability to provide certain bottled food oil products.

68. The past damages from lost sales, reduced sales, and retooling costs directly attributable to Pretium's failure to provide bottles to Gemsa amounts to at least approximately $975,000.

69. Gemsa continues to incur damages in the amount of at least approximately $125,000 per month based on Pretium's failure to supply bottles.

70. On information and belief, Pretium had knowledge of Gemsa's contracts and obligations to supply Gemsa's customers with certain bottled oil food products.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

71. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-55 above, as though restated herein in full.

72. In January 2019, Plaintiff Gemsa and Defendant Pretium entered into a valid, enforceable, and binding written contract evidenced by the "Offer Letter" (a copy of which is attached hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference).

73. Under the contract terms, Pretium was to supply Gemsa with bottle products for three years, and Gemsa was to purchase said bottle products.

74. Under the contract terms, Pretium was to provide an estimated quantity of up to three million bottles per year.

75. Other terms of the valid, enforceable, and binding written contract are set forth in Paragraphs 14 through 27 above.

76. The written Offer Letter evidences acceptance by Defendant Pretium with the signature of a Pretium Sales Manager; in the alternative, Pretium conditioned acceptance of the Offer Letter upon Gemsa's submission of its first

purchase order, which Gemsa satisfied upon its submission of purchase order No. 005330 to Pretium.

77. Plaintiff Gemsa satisfied its obligations under the contract as evidenced by its consistent monthly purchase orders since January 2019.

78. Beginning in or around April 2020, Defendant Pretium materially and substantially breached the contract by delaying fulfillment and delivery of bottle products to Gemsa.

79. Beginning in or around August 2020, Defendant Pretium materially and substantially breached the contract by completely failing to acknowledge all Gemsa purchase orders, as well as failing to deliver any bottle products to Gemsa.

80. As a direct result of Defendant Pretium's breach, as set out in Paragraphs 50-55, Plaintiff Gemsa has sustained damages at least in the amount of approximately $975,000.

81. The damages flow directly form and are the natural and probable consequences of Defendant Pretium's breach.

## SECOND CAUSE OF ACTION
## PROMISSORY ESTOPPEL

82. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-44 and 56-70 above, as though restated herein in full.

83. Plaintiff Gemsa alleges in the alternative to its breach of contract claim that Plaintiff Gemsa is entitled to recover under the doctrine of promissory estoppel if it is determined that either a valid and enforceable contract does not exist, the existing contract does not cover the subject matter of the dispute between Plaintiff Gemsa and Defendant Pretium, or the existing contract is void, invalid, or unenforceable.

84. In January 2019, Defendant Pretium made an unambiguous written promise to Plaintiff Gemsa.

85. This unambiguous written promise was made at least in an email from

a Pretium Sales Manager to Gemsa, where said email also contained an attachment titled "Offer Letter" signed by Pretium (Exhibit A, and which is made a part hereof and incorporated herein by reference).

86. Defendant Pretium was in a position to fully perform, fulfill, and carry out the terms and conditions of the promise it made to Plaintiff Gemsa, and did in fact carry out its promise to Plaintiff Gemsa up until around April 2020.

87. Beginning in or around April 2020, Defendant Pretium delayed fulfillment and delivery of bottle products to Plaintiff Gemsa.

88. Beginning in or around August 2020, Defendant Pretium completely failed to acknowledge all Gemsa purchase orders, as well as failed to deliver any bottle products to Gemsa.

89. It was foreseeable that Defendant Pretium's promise would cause or induce Plaintiff Gemsa to act in reasonable reliance on Pretium's promise.

90. Plaintiff Gemsa fulfilled all of its obligations owed to Pretium.

91. In reliance on Defendant Pretium's promise made in January 2019, Plaintiff Gemsa contracted with its own customers to supply bottled food oil products.

92. As a result of Plaintiff Gemsa's reliance, Gemsa suffered substantial changes in position.

93. Due to Plaintiff Gemsa's reduced supply of bottled food oil products, multiple Gemsa customers were dissatisfied and reduced their purchases, resulting in lost revenue and profits to Gemsa.

94. As a direct result of Pretium's delays in fulfilling and delivering bottle products to Gemsa, Gemsa was unable to make additional sales to new customers.

95. Due to Pretium's total failure to fulfill and deliver bottle products to Gemsa, Gemsa incurred additional costs for retooling production from an alternate bottle manufacturer.

96. Injustice can be avoided only by enforcement of Defendant Pretium's

promise.

97. As set forth in Paragraphs 50-55 above, the damages from lost sales, reduced purchases from Gemsa customers, and additional retooling costs amount to at least approximately $975,000.

## THIRD CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

98. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-70 above, as though restated herein in full.

99. Plaintiff Gemsa is entitled to recover for breach of the implied covenant of good faith and fair dealing due to Pretium's bad faith in refusing to supply bottles to Gemsa as contracted for, while continuing to supply others with similar bottles, thereby unfairly depriving Gemsa of the benefit of the bargain.

100. In January 2019, Plaintiff Gemsa and Defendant Pretium entered into a valid, enforceable, and binding written contract evidenced by the "Offer Letter" (a copy of which is attached hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference).

101. Under the contract terms, Pretium was to supply Gemsa with bottle products for three years, and Gemsa was to purchase said bottle products at specified pricing.

102. Under the contract terms, Pretium agreed to supply up to three million bottles per year.

103. Other terms of the valid, enforceable, and binding written contract are set forth in Paragraphs 14 through 27 above.

104. Plaintiff Gemsa satisfied its obligations under the contract as evidenced by its consistent monthly purchase orders since January 2019.

105. To the extent any existed, Plaintiff Gemsa satisfied and performed any conditions precedent to the Defendant Pretium's performance.

106. Defendant Pretium unfairly deprived Plaintiff Gemsa of the ability to purchase the bottle products by delaying fulfillment and delivery of said bottle products to Gemsa, and subsequently completely failing to provide any bottle products to Gemsa, while unfairly and in bad faith continuing to supply others.

107. Plaintiff Gemsa was harmed by Pretium's delays and ultimate failure to provide bottle products.

108. As a direct result of Defendant Pretium's breach of implied covenant of good faith and fair dealing, and as set out in Paragraphs 50-55, Plaintiff Gemsa has sustained damages at least in the amount of approximately $975,000.

109. Damages suffered by Gemsa in the amount of approximately $125,000 per month continue to accrue even to the present day as the bottle production of the alternate manufacturer still has not been able to meet demand.

## FOURTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH THE PERFORMANCE OF EXISTING CONTRACTS

110. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-70 above, as though restated herein in full.

111. Plaintiff Gemsa has entered into contracts with third parties to supply such parties with certain quantities of bottled food oil products.

112. At all relevant times, these third-party supply contracts were valid and enforceable.

113. Defendant Pretium had knowledge of Gemsa's contractual obligations to supply oil to such third parties.

114. Beginning around July 2020, such third parties began to reduce their orders because Gemsa could not adequately supply its bottled food oil products, which in turn was a direct result of Defendant Pretium's failure to supply bottle products according to its contractual obligations.

115. Defendant Pretium intentionally disrupted these contractual

relationships by its failure to supply bottle products according to its contractual obligations to Gemsa. Defendant Pretium knew that interference with the contractual relationships between Plaintiff Gemsa and such third-parties was certain or substantially certain to occur as a result of Pretium's wrongful conduct because of the nature of the contract and the inherent nature of the industry.

116. As set out in Paragraphs 64-70 above, Defendant Pretium's interference was a substantial factor in causing Plaintiff Gemsa to suffer economic harm from its lost profits in the amount of at least approximately $975,000.

117. The damages flow directly form and are the natural and probable consequences of Defendant Pretium's breach.

118. Damages suffered by Gemsa in the amount of approximately $125,000 per month continue to accrue even to the present day as the bottle production of the alternate manufacturer still has not been able to meet demand.

## FIFTH CAUSE OF ACTION

## FRAUDULENT INDUCEMENT OF A CONTRACT

119. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-70 above, as though restated herein in full.

120. Defendant Pretium represented that Pretium would supply Plaintiff Gemsa with bottle products for a term of three years.

121. Defendant Pretium represented it would supply up to three million bottles per year to Gemsa.

122. Defendant Pretium made these representations knowing they were false, or, alternatively, with reckless disregard for the truth if a more lucrative contract presented itself.

123. Defendant Pretium made these representations to induce Gemsa to enter into an agreement.

124. Plaintiff Gemsa justifiably relied on these misrepresentations to its detriment.

125. As a result of Gemsa's reliance, and as set out in Paragraphs 64-70, Plaintiff Gemsa has sustained damages at least in the amount of approximately $975,000.

126. As a result of Gemsa's reliance, damages suffered by Gemsa in the amount of approximately $125,000 per month continue to accrue even to the present day as the bottle production of the alternate manufacturer still has not been able to meet demand.

## SIXTH CAUSE OF ACTION

## FRAUD IN THE PERFORMANCE OF THE CONTRACT

127. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-70 above, as though restated herein in full.

128. Defendant Pretium represented that Pretium would supply Plaintiff Gemsa with bottle products for a term of three years.

129. Defendant Pretium represented that Pretium would supply up to three million bottles per year to Gemsa.

130. Defendant Pretium gave purported excuses for its delays in fulfilling and delivering bottle products to Gemsa, such as, for example, the COVID-19 pandemic, machine breakdown, and exceedingly hot temperatures inside the manufacturing plant.

131. Defendant Pretium represented that, there were no open purchase orders from Gemsa.

132. Defendant Pretium made these representations knowing they were false, or, alternatively, with reckless disregard for the truth.

133. Defendant Pretium made these representations knowing that not providing Gemsa with bottle products would cause substantial consequential damages to Gemsa due to the nature of the agreement and the inherent nature of the industry.

134. Plaintiff Gemsa justifiably relied on these misrepresentations to its

detriment.

135. As a result of Gemsa's reliance, and as set out in Paragraphs 64-70, Plaintiff Gemsa has sustained damages at least in the amount of approximately $975,000.

136. As a result of Gemsa's reliance, damages suffered by Gemsa in the amount of approximately $125,000 per month continue to accrue even to the present day as the bottle production of the alternate manufacturer still has not been able to meet demand.

## SEVENTH CAUSE OF ACTION
## UNFAIR COMPETITION
**Under California Business & Professions Code §§ 17200 et seq.**

137. Plaintiffs refer to and incorporate in this cause of action Paragraphs 1-70 above, as though restated herein in full.

138. Defendant Pretium's failure to fulfill and deliver any bottle products to Plaintiff Gemsa is misconduct constituting an unfair business act or practice.

139. Defendant Pretium's activities constituted unfair activities as it unfairly deprived Plaintiff Gemsa of the ability to purchase the bottle products by delaying fulfillment and delivery of said bottle products to Gemsa, and subsequently completely failing to provide any bottle products to Gemsa, while unfairly and in bad faith continuing to supply others.

140. Defendant Pretium's failure to fulfill and deliver any bottle products to Plaintiff Gemsa directly results in Plaintiff Gemsa being unable to compete with other industrial and food oil product manufacturers and suppliers, thus having a significant adverse impact on competition within the food products market.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Gemsa demands judgment against Defendant Pretium as follows:

1. For general, economic, and special damages (e.g., including past and

future lost profits), and other damages as may be appropriate, in the amount of at least approximately $975,000 (or an amount to be determined according to proof at trial);

    2.    For punitive damages as may be appropriate;

    3.    That Defendant pay Plaintiff pre-judgment interest;

    3.    That Defendant pay Plaintiff post-judgment interest;

    4.    That Plaintiffs have and recover their costs in this action, including attorneys' fees; and

    5.    That Plaintiffs have such other and further legal and equitable relief as the court may deem just and proper.

Dated: May 6, 2021

Respectfully submitted,

KPPB LLP

By: /s/ Joel A. Kauth
    Joel A. Kauth
    Mark Yeh

Attorneys for Plaintiff Gemsa Enterprises, LLC.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff GEMSA ENTERPRISES, LLC hereby demands a trial by jury of all issues in their Complaint so triable.

Dated: May 6, 2021

Respectfully submitted,

KPPB LLP

By: /s/ Joel A. Kauth
    Joel A. Kauth
    Mark Yeh

Attorneys for Plaintiff Gemsa Enterprises, LLC

676479